|  |  |  |
|---|---|---|
| TIMOTHY DEMETRI BROWN, *pro se*, | ) | |
| | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 10-cv-1292 (RCL) |
| | ) | |
| FEDERAL BUREAU OF | ) | |
| INVESTIGATION, *et al.*, | ) | |
| Defendants. | ) | |
| | ) | |

**MEMORANDUM OPINION**

## I. INTRODUCTION

Timothy Demetri Brown was convicted in 2002 on several charges related to his "participation in a major drug distribution conspiracy stretching from 1993 to 1999." *United States v. Brown*, 86 Fed. Appx. 749, 752 (5th Cir. 2004); *see also United States v. Brown*, No. 01-cr-10012 (W.D. La. Apr. 8, 2003). Currently serving a life sentence, Brown brings this complaint against the Federal Bureau of Investigation ("FBI") and several other governmental agencies, raising claims under the Administrative Procedure Act, 5 U.S.C. § 553 ("APA") and the Freedom of Information Act, 5 U.S.C. § 552 ("FOIA"). Defendants have moved to dismiss, and there are several other motions—including plaintiff's motion for a preliminary injunction and plaintiff's motion for partial summary judgment—before the Court. For the reasons stated below, all of plaintiff's motions will be denied, except his motion for leave to amend which will be granted in part and denied in part. His FOIA claim against the FBI, Am. Compl./Pet. Review 4, ECF No. 18, and FOIA claim against the Tax Division of the Department of Justice ("DOJ"), Second Am. Compl./Pet. Review 7, ECF No. 21-1 ("Second Am. Compl."), remain, but all other

claims and defendants will be dismissed from the case. An order will be entered requiring defendants FBI and DOJ to produce *Vaughn* indexes for documents and files that are the subject of plaintiff's remaining FOIA claims.

## II. BACKGROUND

Timothy Brown, along with his brother Christopher Michael Brown and coconspirator Kenneth Wayne Pearson, were convicted on charges of conspiracy and distribution of crack cocaine in 2002. *See generally Brown*, 86 Fed. Appx. 749. Plaintiff was also convicted on money laundering charges, and the trial court ordered him to forfeit certain property belonging to him as part of the judgment. *Id.* at 752. Plaintiff's direct appeal and a collateral attack were both denied, *id.*, and while Kenneth Pearson's conviction was vacated by the Supreme Court, *Pearson v. United States*, 543 U.S. 1116 (2005) (remanding for rehearing in light of the Court's decision in *United States v. Booker*, 540 U.S. 220 (2005)), plaintiff's petition for writ of certiorari was denied, *Brown v. United States*, 546 U.S. 1118 (2006).

Incarcerated at Talledaga Federal Correctional Institution ("FCI-Talledaga"), after some time in the general population, plaintiff was transferred to the prison's Special Management Unit ("SMU"), a separate section used to manage inmates that "present unique security and management concerns." Attach. 1 to Pl.'s Reply Defs.' Mem. Points and Authorities Opp'n Pl.'s Mot. Leave Am. and Supplement Compl./Pet. Review 2, ECF No. 27-1 ("Attach. Pl.'s Reply"). "A multi-phase program whose mission is to teach self-discipline, pro-social values, and the ability to successfully coexist with [other inmates]," Attach. 1 Mot. Prelim. Inj. and Order Show Cause, ECF No. 29-1 ("Attach. Prelim. Inj."), visitors to the unit have restricted privileges and limited interaction with other prisoners. *Id.* Although he was generally dissatisfied with the SMU's amenities, plaintiff was particularly irritated by his mandated participation in "self-study,

individual, and group activities provided by Psychology Services," *id.*, characterizing his stay at the SMU as a "forced psychological treatment prolonged isolation regiment [sic]," Mot. Prelim. Inj. and Order Show Cause 1, ECF No. 29 ("Mot. Prelim. Inj."). The program was apparently minimally successful, because at some point between February 23 and April 8, 2011, plaintiff was transferred out of FCI-Talledaga to the Administrative Max facility in Florence, Colorado ("ADX-GP").

While in Talledaga, plaintiff filed suit against the FBI, asserting three claims under FOIA and one asking the government to resolve what he termed "federal questions." *United States v. Brown*, 675 F. Supp. 2d 122 (D.D.C. 2009). Two of the FOIA claims concerned records related to a book Mr. Brown was allegedly writing, and the other referred to plaintiff's request for FBI records on himself. *Id.* at 124. The federal questions, which are similar to two of the APA claims he brings here, asked the court (1) whether the government properly exercised jurisdiction over the property that plaintiff forfeited and (2) what the legal status of the statutes under which plaintiff was convicted is. *Id.* The court dismissed the FOIA claims for lack of administrative exhaustion, and the federal question claim was dismissed because it sought relief not available under FOIA. *Id.* at 123–24. Mr. Brown moved the court to reconsider and sought leave to amend, but the motions were denied because he provided no basis for reconsideration and unduly delayed seeking leave to amend. *United States v. Brown*, 744 F. Supp. 2d 120 (D.D.C. 2010).

Prior to denial of his motion for reconsideration and to amend, plaintiff initiated this suit, asserting two APA claims against the FBI, one APA claim against the Department of Justice and one FOIA claim against the FBI. Compl./Pet. Review, ECF 1 ("Compl."). His first APA claim argued that the FBI's determination that 21 U.S.C. §§ 841 and 846—the statutes under which plaintiff was convicted—were criminal laws was in error and sought an order correcting that

erroneous determination. The second suggested that the government had improperly asserted jurisdiction over the property that he forfeited in the original case, *United States v. Brown*, No. 01-cr-10012 (W.D. La. Apr. 8, 2003), and his third concerned the DOJ's refusal to respond to a petition he sent asking them to promulgate clear and concise rules for United States Attorney's Offices ("USAO") to determine when it is proper to prosecute someone under the Controlled Substances Act. Compl. The only FOIA claim plaintiff brought at that time was related to recordings of an FBI buy-bust that plaintiff alleges he was subject to, recordings which plaintiff claims would show that he was not part of the drug trade. *Id.* Defendants moved to dismiss, arguing that the plaintiff did not have standing to bring the APA claims; that some of his claims were barred by claim preclusion; that defendant failed to state a claim under the APA; and that plaintiff could not impliedly invalidate his criminal conviction through civil suit. Defs.' Mot. Dismiss, Nov. 8, 2010, ECF No. 11 ("Mot. Dismiss"). Thereafter, plaintiff filed a motion for partial summary judgment on the FOIA claim, Mot. Partial Summ. J., ECF No. 15 ("Part. Summ. J."), a motion to strike the motion to dismiss, and a motion for more definite statement for that motion, Mot. Strike and Mot. More Definite Statement, ECF No. 16 ("Mot. Strike").

On November 30, 2010 plaintiff amended his complaint, adding a FOIA claim against the Bureau of Prisons for failing to provide administrative records for Program Statement 5217.01, which describes the rules and aims of the SMUs. Am. Compl. 5. Mr. Brown also included an APA claim against BOP for failing to respond to his petition to repeal Program Statement 5217.01. *Id.* Two weeks later plaintiff filed a motion to amend his complaint in which he sought to add seven additional FOIA claims against a variety of agencies. Second Am. Compl. 5-7. Defendant Bureau of Prisons ("BOP") moved to dismiss plaintiff's first amended complaint on December 20, Def. Federal Bureau of Prisons' Mot. Dismiss, ECF No. 22 ("BOP Mot.

Dismiss"), and opposed his motion to amend on January 3, 2011. Plaintiff then filed a motion for preliminary injunction on Feb. 10, 2011, asking the Court to enjoin BOP from including plaintiff in the SMU, which Brown claimed constituted torture and forced psychological treatment, Mot. Prelim. Inj.

## IV. DISCUSSION

Before the Court are defendants' Motion(s) to Dismiss, ECF Nos. 11, 22, Plaintiff's Motion for Partial Summary Judgment, ECF No. 15, Plaintiff's Motion to Strike/Motion for a More Definite Statement, ECF No. 16, Plaintiff's Motion for Leave to Amend, ECF No. 21, and Plaintiff's Motion for Preliminary Injunction/Order to Show Cause, ECF No. 29. For the reasons set out below, the Court will deny all of plaintiff's motions excepting his motion for leave to amend, which will be granted as to Claim XII against the Tax Division of the DOJ. The Court will grant defendants their motions to dismiss, although not insofar as they request that defendant FBI be dismissed from the case.

### A. Plaintiff's Standing to Assert APA Claims

Federal district courts are courts of limited jurisdiction, *Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375, 377 (1994), and a Rule 12(b)(1) motion for dismissal presents a threshold challenge to a court's jurisdiction. *Haase v. Sessions*, 835 F.2d 902, 906 (D.C. Cir. 1987). In evaluating such a motion, the Court must "accept as true all of the factual allegations contained in the complaint," *Wilson v. District of Columbia*, 269 F.R.D. 8, 11 (D.D.C. 2010) (citing *Leatherman v. Tarrant Cnty. Narcotics Intel. & Coordination Unit*, 507 U.S. 163, 164 (1993)), and should review the complaint liberally while accepting all inferences favorable to the plaintiff. *Barr v. Clinton*, 370 F.3d 1196, 1199 (D.C. Cir. 2004). At the same time, the Court may consider relevant materials outside the pleadings, *Settles v. U.S. Parole Comm'n*, 429 F.3d

1098, 1107 (D.C. Cir. 2005), and must remain cognizant that "the plaintiff's factual allegations in the complaint will bear closer scrutiny in resolving a 12(b)(1) motion than in resolving a 12(b)(6) motion for failure to state a claim." *Wilson*, 269 F.R.D. at 11 (quotations omitted). In defending against a Rule 12(b)(1) motion, the plaintiff bears the burden of demonstrating that jurisdiction exists. *Khadr v. United States*, 529 F.3d 1112, 1115 (D.C. Cir. 2008).

An integral part of establishing a court's jurisdiction is meeting the "irreducible constitutional minimum of [Article III] standing . . . [which] contains three elements. First, the plaintiff must have suffered an injury in fact—an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical. Second, there must be a causal connection between the injury and the conduct complained of— the injury has to be fairly . . . traceable to the challenged action of the defendant, and not . . . the result of the independent action of some third party not before the court. Third, it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Ass'n of Am. Physicians*, 358 Fed. Appx. 179, 180 (D.C. Cir. 2009) (quoting *Lujan*, 504 U.S. at 560–61). "At the pleading stage, 'general factual allegations of injury resulting from the defendant's conduct may suffice,' and the court 'presumes that general allegations embrace the specific facts that are necessary to support the claim.'" *Sierra Club v. EPA*, 292 F.3d 895, 898 (D.C. Cir. 2002) (quoting *Lujan*, 504 U.S. at 561). However, "nondescript and conclusory allegations of injury are not the type of general factual allegations from which the Court may presume the specific facts necessary to ensure that the plaintiff has standing, and are insufficient to meet the plaintiff's burden of alleging an injury in fact that is concrete and particularized." *Wright v. McPhie*, No. 04-cv-1204, 2005 WL 3273556, at *3 (D.D.C. Sept. 27, 2005) (internal citations removed).

Under 5 U.S.C. § 553, "agencies are obligated to fully and promptly consider rulemaking petitions and provide a petitioner with a prompt reply." *Mendoza v. United States Dep't of Justice*, No. 89-cv-1979, 1990 U.S. Dist. LEXIS 10074, at *3 (D.D.C. 1990). *See also WWHT, Inc. v. Fed. Commc'ns Comm'n*, 656 F.2d 807, 813 (D.C. Cir. 1981) ("an agency must receive and respond to petitions for rulemaking.") However, "[t]he fact that Congress may have given all interested parties the right to petition . . . does not in turn automatic[ally] confer Article III standing when that right is deprived . . . the grant of a procedural right alone cannot serve as the basis for Article III standing unless the procedures in question are designed to protect some threatened concrete interest of [the petitioner] that is the ultimate basis of his standing." *Gettman v. DEA*, 290 F.3d 430, 433 (D.C. Cir. 2002) (internal citation removed); s*ee also Fund Democracy, LLC v. SEC*, 278 F.3d 21, 27 (D.C. Cir. 2002) ("A party has standing to challenge an agency's failure to abide by a procedural requirement only if the government act performed without the procedure in question will cause a distinct risk to a particularized interest of the plaintiff."). Concurring in *Fund*, Judge Edwards suggested that the court would not deny standing "in cases where a statute or regulation affords a party such a particularized procedural right." *Id.* at 28. Because the Administrative Procedure Act is less than crystal-clear on plaintiff's statutory right to a response, even this broader interpretation will not automatically confer Article III standing over plaintiff's claim. *See* 5 U.S.C. § 555(e) ("Prompt notice shall be given of the denial in whole or in part of a written application, petition, or other request *made in connection with any agency proceeding*.") (emphasis added). Because Mr. Brown's request is not made in connection with any agency proceeding, the statute itself does not afford him the right to a response.

Defendants argue that Mr. Brown does not have standing to bring his APA claims because he does not have a threatened concrete interest in any of the petitions. Each APA claim will be examined individually.

### 1. Plaintiff's Challenge to 21 U.S.C. § 841 and 846

Plaintiff's first APA claim is essentially a restatement of one of the "federal questions" that was dismissed in his prior action. He contends that the FBI and USAO have erroneously determined that 21 U.S.C §§ 841 and 846 (the sections of the U.S. Code under which he was convicted and sentenced, *Brown*, 86 Fed. Appx. 749) are criminal laws. Am. Compl. 3. Arguing that these sections "have never been properly enacted by congress as criminal laws," *id.*, and that they "have never been adopted for general federal police power jurisdiction," *id.*, plaintiff asks the Court to "issue an order that the agency(s)' actions, decisions, claim and/or interpretation of Title 21 U.S. Code sections 841 and 846 is [sic] in error. . . . That [the sections] are NOT criminal laws," *id.* at 6. The claim will be dismissed for lack of subject-matter jurisdiction and because it is barred under *Heck v. Humphrey*, 512 U.S. 477 (1987), and its progeny.

To the extent that plaintiff argues that his continued incarceration under 21 U.S.C. §§ 841 and 846 constitutes an injury-in-fact and gives him standing, his claim is foreclosed by *Heck* and its progeny. In *Heck*, the Court held that a plaintiff could not recover damages under 42 U.S.C. § 1983 for an allegedly unconstitutional conviction unless "the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus." 512 U.S. at 486–87. Plaintiff argues that *Heck* applies only to damages under 42 U.S.C. § 1983, but "courts have extended *Heck's* rationale beyond the context of § 1983 to a variety of situations where a plaintiff has been convicted of a federal crime and later

files a civil action which, if successful, would necessarily imply the invalidity of plaintiff's conviction." *Terry v. SBA*, 699 F. Supp. 2d 49, 55 (D.D.C. 2010). The court in *Terry* refused, as the Court does today, "to step impermissibly into the shoes of the court which originally imposed the sentence." *Id.* at 56 (internal citations omitted).

Plaintiff's conviction was upheld on direct appeal, *Brown* 86 Fed. Appx. at 756, and although the Supreme Court vacated and remanded the Fifth Circuit's decision with regards to one of Mr. Brown's codefendants, *Pearson v. United States*, 543 U.S. 1116 (2005), his own conviction has never been successfully challenged. *Heck* was decided to dispose of precisely the type of claims brought by plaintiff here: "[requiring invalidation] avoids parallel litigation . . . and it precludes the possibility of the claimant succeeding in [a civil action] after having been convicted in the underlying criminal prosecution, in contravention of a strong judicial policy against the creation of two conflicting resolutions arising out of the same or identical transaction." *Heck v. Humphrey*, 512 U.S. at 484. Not only did plaintiff have—and take—the opportunity to directly challenge his conviction, he also unsuccessfully attempted to litigate this issue in his first civil suit. *See Brown*, 675 F. Supp. 2d 122.

Beyond an impermissible interest in challenging his conviction, plaintiff does not and cannot explain how a determination by this Court that 21 U.S.C. §§ 841 and 846 are not criminal laws will "more directly and tangibly [benefit him] than it [would] the public at large." *Lujan*, 504 U.S. at 573. He has not demonstrated any "threatened concrete interest," *Gettman*, 290 F.3d at 433, upon which his standing could rest. Mr. Brown's joyride on the federal court merry-go-round must—like all good things—come to an end. *Heck v. Humphrey* bars his attempt to collaterally attack his criminal conviction, and because he does not have a cognizable interest in

this claim that rises above the level of a generally available grievance about government, he fails to meet the minimum requirement of standing.

## 2. Claim Challenging Court's Jurisdiction over Plaintiff's Property

In plaintiff's second APA claim he argues that the FBI, USAO, and United States Attorney General ("AG") improperly "obtained legislative jurisdiction over property at 3708 Third Street, Alexandria, Louisiana." Am. Compl. 3. The property in question was forfeited by the plaintiff as part of the judgment against him in his criminal proceeding. *Brown*, 86 Fed. Appx. at 752. He and two innocent-owner claimants unsuccessfully challenged the forfeiture on appeal. *Id.* at 764–766. Although plaintiff's attempts to dispute the government's jurisdiction over the property failed in both his original criminal case and on appeal, his persistence knows no limits—and little logic—and he questions the government's jurisdiction again here, citing a string of irrelevant regulations and statutes in an attempt to bolster what is clearly a spurious claim.

Plaintiff first cites 28 C.F.R. § 0.56 for the proposition that the Attorney General has the authority to determine the jurisdictional status of property. Am. Compl. 3. The regulation, however, has absolutely no bearing on the government's ability to seize property but instead regulates the Attorney General's "authority to determine whether the federal government has criminal jurisdiction over acts committed upon federal land." *United States v. Gabrion*, 517 F.3d 839, 865 (6th Cir. 2008). Plaintiff's reliance on 40 U.S.C. § 3112 is equally erroneous. Although it is not clear what plaintiff thinks 40 U.S.C. § 3112 says, the statute in fact covers the processes by which the United States government may choose to "obtain exclusive jurisdiction in the United States over land or an interest in land it acquires." 40 U.S.C. § 3112. Namely, it permits the United States to decline jurisdiction over land it purchases or acquires an interest in, and

describes the appropriate process by which authorized governmental actors can decide to attain jurisdiction—for the purposes of criminal prosecution or federal regulation—over property. *Id.*

Fortunately, plaintiff's venture into the zone of irrelevance is limited to those two easily-dispelled citations, and the judgment is clearly proper under 21 U.S.C. § 853(a), which permits courts to order forfeiture of "any property constituting, or derived from, any proceeds the person obtained . . . as the result of [violations of the Controlled Substances Act]." 21 U.S.C. § 853(a). Even were the forfeiture order improper, plaintiff was given the opportunity to challenge the forfeiture on appeal and was unsuccessful. *Heck v. Humphrey* bars a civil inquiry into the matter, as explained above.

### 3. Plaintiff's Petition to Repeal Program Statement 5217.01

Plaintiff raises a claim concerning the Bureau of Prisons' failure to respond to his "Petition to Repeal," in which he asked the BOP to initiate proceedings to consider the repeal of Program Statement 5217.01 (in essence asking them to repeal the Special Management Unit system). Plaintiff seeks an order from the court that the BOP process his petition. Am. Compl. 6.

Though this Court need not—and does not—pass judgment on whether Mr. Brown would have had Article III standing were he still part of the Special Management Units, it is clear that his transfer to ADX-GP negates any "particularized," *Fund*, 278 F.3d at 27, or "threatened concrete interest," *Gettman*, 290 F.3d at 433, he may have had in the petition while an inmate at FCI-Talledaga. No longer subject to the program, plaintiff's interest—at best—amounts to a "generally available grievance about government," and does not provide adequate injury to support standing. *Lujan*, 504 U.S. at 573-74. The court in *Gettman* "wish[ed] to make clear" their resistance to transforming "the federal courts into 'no more than a vehicle for the vindication of the value interests of concerned bystanders,'" *id.* at 435 (citing *Allen v. Wright*, 468 U.S. 737,

756 (1984)), and plaintiff's transfer to the Ad-Max facility in Florence makes him into just such a concerned bystander. Mere denial of a procedural right is not itself sufficient injury-in-fact, as made evident by *Gettman* and *Fund*. In short, plaintiff does not have standing to bring this claim.

### 4. Plaintiff's Petition to the Justice Department

Mr. Brown also challenges the Justice Department's lack of response to a petition he filed asking them to "promulgate clear and concise rules for United States Attorney(s) to determine when it is lawful to prosecute a state citizen for a federal control [sic] substance regulatory violation." Am. Compl. 5. Plaintiff's first amended complaint contained only the conclusory allegation that he had been "adversely effected [sic]," *id.* at 1, by the agency's unresponsiveness, and as such his initial complaint would be dismissed for lack of standing. *See Wright*, 2005 WL 3273556, at *3 (holding that nondescript and conclusory allegations of injury are not the type of allegations from which the court will infer facts to ensure standing at the pleadings stage).

In his second amended complaint, plaintiff alleges that he "is under imminent threat of being federally prosecuted for the sell [sic] of 'PROCAINE.'" Second Am. Compl. 1. Procaine is a known "diluting or 'cutting' agent," *United States v. Johnson*, 592 F.3d 164, 167 (D.C. Cir. 2010), "commonly cut with cocaine for the purpose of stretching out the amount of crack produced," *United States v. Franklin*, 148 F.3d 451, 454 (5th Cir. 1998). Presumably plaintiff wants the DOJ to promulgate rules clarifying whether or not Procaine is covered by the Controlled Substances Act. The mere denial of a procedural right being insufficient to establish standing, *Gettman,* 290 F.3d at 433, Mr. Brown must demonstrate that denial of this procedural right affects a threatened concrete interest that is the ultimate basis of his standing. *Id.* Though his—alleged—past prosecution and conviction for Procaine distribution, *see* Pl.'s Reply Defs.'

Mem. of Points and Authorities in Opp'n to Pl.'s Mot. for Leave Am. and Supplement Compl./Pet. Review 4, ECF No. 27 ("Pl.'s Reply"), might give rise to a concrete interest, plaintiff is barred under *Heck* and *Terry* from challenging his original criminal conviction in a civil suit under the APA. *See Terry*, 699 F. Supp. 2d at 55. Even assuming that plaintiff was previously prosecuted for Procaine distribution—an assumption completely unjustified in light of the total absence of evidence in the record—and that his conviction was a threatened concrete interest, his suit would be dismissed under *Terry* for failure to state a claim upon which relief could be granted.

Alternatively, plaintiff attempts to demonstrate a threatened concrete interest by claiming in his motion for leave to amend that he is currently under investigation for Procaine distribution. Mot. Leave Am. and Supplement Compl./Pet. Review 3, ECF No. 21 ("Mot. Leave"). Somewhat curiously—and this may be a testament to plaintiff's limited knowledge of the "investigation"— in his actual complaint he says only that he is under *imminent threat* of prosecution. Second Am. Compl. 1 (emphasis added). Because the alleged injury from future prosecution is conjectural and hypothetical, it cannot be a source of standing. With regard to standing, "[a]t the pleading stage, 'general *factual* allegations of injury resulting from the defendant's conduct may suffice,' and the court 'presumes that general allegations embrace the specific facts that are necessary to support the claim.'" *Sierra Club v. EPA*, 292 F.3d 895 (D.C. Cir. 2002) (citing *Lujan*, 504 U.S. at 561) (emphasis added). However, "conclusory allegations of injury are not the type of general factual allegations from which the Court may presume the specific facts necessary to ensure that the plaintiff has standing, and are insufficient to meet the plaintiff's burden of alleging an injury in fact that is concrete and particularized." *Wright*, 2005 WL 3273556, at *3 (internal citation removed).

Although plaintiff says he is under imminent threat of prosecution, the only evidence he proffers to substantiate that claim is an unlabeled, undated inventory of evidence, which has entries on separate lines for "30 Photographs of Package Containing Procaine" and "Photos of UPS – Procaine Notes From Procaine Shipment." Mot. Leave 8. Large portions of the document are redacted, and nothing in it indicates either that it is related to Mr. Brown or that it is part of an ongoing investigation. *Id.* Though on a motion to dismiss the court will view the pleadings in the light most favorable to the nonmoving party, plaintiff alleges no more than a conjectural or hypothetical injury, and the word "imminent" is not a magic phrase—as perhaps plaintiff hopes—that will transform his baseless accusations from conjecture to injury-in-fact. Courts may not "accept inferences drawn by plaintiffs if such inferences are unsupported by the facts set out in the complaint," *Iqbal*, 129 S. Ct. at 1949, and plaintiff's assertion that he is being prosecuted is not supported by any facts set out in the complaint. Leaving aside the absurdity of plaintiff's assertion that federal agents would waste resources investigating a man serving a life term for distribution of Procaine, plaintiff's paranoid belief that he is being prosecuted is not a "threatened concrete interest," and plaintiff's argument is done in by "the purely speculative nature of the harm and its remediability." *Gettman*, 290 F.3d at 434. There is no indication in plaintiff's criminal case that he was prosecuted for Procaine possession or distribution, and the mere inclusion of Procaine in a document whose source, subject-matter, and tie to Mr. Brown are absolutely unclear is the type of "nondescript and conclusory allegation," *id.*, from which the Court should not presume the specific facts necessary to ensure that standing exists.[1] Although

---

[1] Though the DOJ could have easily disposed of plaintiff's claim by submitting an affidavit demonstrating that Mr. Brown was not currently under investigation, they instead elected to take a more circuitous route, claiming that there is no statute under which plaintiff could be prosecuted for Procaine distribution. Mem. Points and Authorities Opp. Pl.'s Mot. Leave Am. and Supplement Compl./Pet. Review 5, ECF No. 25. While that is all well and good, it is only tangential to plaintiff's claim that he *is* being prosecuted, and has the odd effect of affirming plaintiff's position. After all, if there is no law under which he could be prosecuted yet he still is being prosecuted, perhaps there *do* need to be more clear rules and regulations. Fortunately for defendants, plaintiff cannot carry the burden required of

plaintiff attempted to remedy the standing issue in his second amended complaint, the amended complaint would not withstand a motion to dismiss, so his motion to amend will be denied as futile and his claim dismissed. *See James Madison, Ltd. v. Ludwig*, 82 F.3d 1085, 1099 (D.C. Cir. 1996) (holding that amendments can be denied where they would not withstand a motion to dismiss).

### B.     Administrative Exhaustion

#### 1.     Plaintiff's Motion for Leave to Amend the Complaint to Add New FOIA Claims

Plaintiff has moved for leave to amend his complaint, adding seven new FOIA claims against a number of defendant agencies. Plaintiff's motion will be denied as to six of these claims, and granted as to Claim XII against the Tax Division.

A party may amend its pleading once as a matter of course. Fed. R. Civ. P. 15(a)(1). After amending as a matter of course, a party may amend "only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). Because plaintiff has already amended his complaint as a matter of course, Am. Compl., and the defendants do not give consent, it is up to the court to give plaintiff leave to amend. *Id.* "Courts may deny a motion to amend a complaint as futile . . . if the proposed claim would not survive a motion to dismiss." *James Madison, Ltd.*, 82 F.3d at 1099. *See also Foman v. Davis*, 371 U.S. 178, 182 (1962) (listing reasons to deny motion for leave to amend). Plaintiff does not allege administrative exhaustion for six of his seven new claims, and therefore fails to state a claim upon which relief can be granted. Because these claims would not survive a motion to dismiss, the amendment is denied as futile as to claims VII-XI and XIII, which are dismissed

---

him, or the DOJ would be in the unenviable position of having to defend a prosecution they themselves admitted was not permitted by law.

without prejudice. *James Madison, Ltd.*, 82 F.3d at 1099. His motion for leave to amend is granted as to his FOIA claim against the Tax Division of the DOJ, Second Am. Compl. 7.

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of a complaint. *Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002). To satisfy this test, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "[W]hen ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint," *Atherton v. District of Columbia*, 567 F.3d 672, 681 (D.C. Cir. 2009), and grant a plaintiff "the benefit of all inferences that can be derived from the facts alleged." *Kowal v. MCI Commc'ns Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994). A court, however, may not "accept inferences drawn by plaintiffs if such inferences are unsupported by the facts set out in the complaint." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). In other words, "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Id.*; *see also Atherton*, 567 F.3d at 681 (holding that complaint must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged").

A FOIA plaintiff fails to state a claim upon which relief can be granted under Fed. R. Civ. P. 12(b)(6) when he or she fails to allege administrative exhaustion. *See United States v. Bestor*, No. 04-cv-2049, 2005 U.S. Dist. LEXIS 18908, at *11 ("No FOIA claim is stated in the absence of an allegation that the requester exhausted his administrative remedies."). Courts have consistently confirmed that "FOIA requires exhaustion of [the] appeal process before an individual may seek relief in the courts." *Oglesby v. U.S. Dep't of the Army*, 920 F.2d 57, 61–62 (D.C. Cir. 1990). The burden of demonstrating administrative exhaustion is on the plaintiff. *See*

*Arnold v. U.S. Secret Serv.*, No. 05-cv-0450, 2006 U.S. Dist. LEXIS 71832, at *4 (D.D.C. Sept. 29, 2006) ("It is plaintiff's burden to show his prior exhaustion of his administrative remedies."); *Schoenman v. FBI*, No. 04-cv-2202, 2006 U.S. Dist. LEXIS 14905, at *49–50 (D.D.C. March 31, 2006) (affirming that the burden of demonstrating exhaustion is on the plaintiff). There are good reasons to place the burden of demonstrating exhaustion on the plaintiff: "[i]f a party could avoid the exhaustion requirement merely by asserting that they had pursued all available administrative relief, administrative agencies would be placed in the position of having to prove the negative: that proper avenues of appeal had not been pursued." *Williams v. McCausland*, No. 90-cv-7563, 1994 U.S. Dist. LEXIS 353, at *4 (S.D.N.Y. Jan. 18, 1994), *cited with approval in Bestor*, 2005 U.S. Dist. LEXIS 18908, at *12; *Arnold*, 2006 U.S. Dist. LEXIS 71832, at *4.

Plaintiff here has done little other than allege that he submitted FOIA requests and has not received the documents he requested. By way of example, his claim against the DEA reads, in its entirety: "Drug Enforcement Administration has unlawfully refused and/or withheld records in the agency's files concerning plaintiff. . . . Plaintiff filed a FOIA request with the agency on January 31, 2009. . . . Plaintiff's request was assigned number 09-0533-P. . . . The agency unlawfully withheld records and/or claimed inapplicable exemptions." Second Am. Compl. 5. All his other claims—with one exception, discussed below—are similarly deficient. *Id.* at 5–7. Mr. Brown has not placed information into the record showing that the agency denied his request or that he appealed their denial, and he has therefore failed to allege administrative exhaustion. *Bestor*, 2005 U.S. Dist. LEXIS 18908, at *11.

The only claim that goes a step further is claim XII, one of his FOIA claims against the Department of Justice. Plaintiff claims, not in his complaint but in his reply to defendants' opposition, that he "filed appeal of the denial of the requested records on November 29, 2010."

Pl.'s Reply at 4. In *Bestor*, the plaintiff received an unsatisfactory response to his initial request and appealed, but in his suit failed to allege that the agency had received his appeal or responded to it. *Bestor*, 2005 U.S. Dist. LEXIS 18908, at *9. His failure to carry that burden was enough to doom the complaint. *Id.* Although Mr. Brown's allegations are analogous, in *Bestor* the Court emphasized that plaintiff "essentially concede[d] the facts set forth by the defendant in its motion [to dismiss]," *id.* at 13, and that he did not "dispute the facts asserted by the defendant," *id.* Plaintiff does just the opposite here, insisting that he did file an appeal and has still not received satisfactory relief. According to his reply, plaintiff filed an appeal on November 29, 2010, meaning the thirty day period within which the agency would be required to respond has long passed. *See* 5 U.S.C. § 552(a)(6)(A)(2). His administrative remedies are almost certainly exhausted, whether actually or constructively. Though we urge plaintiff to submit evidence clearly demonstrating exhaustion of his administrative remedies should defendant file for summary judgment, his claim against the Tax Division of the DOJ would survive a motion to dismiss and for that reason leave to amend is granted.[2] His other FOIA claims, however, will not survive a dispositive motion, and his motion for leave to amend will be denied as futile as to those claims.

### 2. Plaintiff's FOIA Claim Against the BOP

Defendant Bureau of Prisons has not moved to dismiss plaintiff's FOIA claim for administrative records of Program Statement 5217.01, Am. Compl. at 5, but because plaintiff fails to allege administrative exhaustion his claim will be dismissed with leave to amend.

---

[2] Defendants' reliance on *Wolf v. CIA*, 569 F. Supp. 2d 1 (D.D.C. 2008), is misguided, and their argument that allowing the amendment will prejudice their client is absurd. In *Wolf* the court balked at adding claims whose related searches would require $147,000 and 3675 hours to complete. *Id.* The burden placed on defendant by one additional FOIA claim—90 hours by the defendants' estimate— in the present case is relatively miniscule. As plaintiff's FOIA claim against the DOJ is not dismissed, it will be necessary for defendant to produce a *Vaughn* index for the documents that are the subject of plaintiff's request.

Mr. Brown's claim against the BOP shares the deficiencies of those in his second amended complaint: his complaint merely states that "[t]he agency has refused to provide the records" he requested. Am. Compl. 5. Thus, he has clearly failed to state a claim upon which relief may be granted. *See Bestor*, 2005 U.S. Dist. LEXIS 18908, at *11 (denying relief where plaintiff pleads more, including that the plaintiff received a response and filed an appeal). Although the BOP has not moved to dismiss, the Court may grant a 12(b)(6) motion to dismiss sua sponte. *Baker v. Director*, *U.S. Parole Comm'n*, 916 F.2d 725. 727 (D.C. Cir. 1990). The Court will, however, grant leave to amend because "sua sponte dismissal of a complaint for failure to state a claim without leave to amend is error unless 'the claimant cannot possibly win relief. . . . This will be the case either when the facts alleged affirmatively preclude relief, or because, even though plaintiff makes clear that he has facts to add to his complaint, he would not have a claim upon which relief could be granted even with those facts.'" *Plummer v. Mayor*, 371 Fed. Appx. 106, 107 (D.C. Cir. 2010) (citing *Razzoli v. Fed. Bureau of Prisons*, 230 F.3d 371, 377 (D.C. Cir. 2000)) (internal citations removed). The facts here do not affirmatively preclude relief—the issue is that plaintiff has not alleged enough, not that any undisputed facts prevent him from succeeding on the merits—and Mr. Brown would have an actionable claim if he would explicitly allege administrative exhaustion by pointing to specific documents.

**B.      Plaintiff's Motion to Strike/Motion for a More Definite Statement**

Plaintiff filed a motion to strike defendants' motion to dismiss on November 22, 2010, arguing that defendants' motion "raises issues wholly unrelated to the matters before this Court" and was "presented only to attempt to vilify the plaintiff." Mot. Strike. Whatever the caliber of complainant's conspiratorial contentions, his motions have no basis in the Rules of Civil Procedure, which are clear on the subject: "[t]he court may strike *from a pleading* an insufficient

defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f) (emphasis added). "[A] cursory review of the Federal Rules of Civil Procedure informs that non-pleadings . . . are not subject to motions to strike." *Great Socialist People's Libyan Arab Jamahiriya v. Ahmad Miski*, 683 F. Supp. 2d 1, 15 (D.D.C. 2010). S*ee also* Fed. R. Civ. P. 7(a) (the only pleadings allowed are "(1) a complaint; (2) an answer to a complaint; (3) an answer to a counterclaim designated as a counterclaim; (4) an answer to a crossclaim; (5) a third-party complaint; (6) an answer to a third-party complaint; and (7) if the court orders one, a reply to an answer."); 2 James Wm. Moore et al., Moore's Federal Practice – Civil ¶ 12.37 (3d ed. 2011) ("Only material included in a 'pleading' may be the subject of a motion to strike, and courts have been unwilling to construe the term broadly. Motions, briefs or memoranda . . . may not be attacked by the motion to strike.").

Plaintiff's motion for a more definite statement is also clearly invalid: "A party may move for a more definite statement *of a pleading to which a responsive pleading is allowed.*" Fed. R. Civ. P. 12(e) (emphasis added). Because a motion to dismiss is neither a pleading nor a pleading to which a responsive pleading is allowed, it cannot be struck from the record nor is it subject to a motion for a more definite statement.

### C.    Plaintiff's Motion for Preliminary Injunction

Preliminary injunctions are "an extraordinary remedy, [and] courts should grant relief sparingly," *United Gov't Sec. Officers of Am. Int'l Union v. Serv. Emp'rs' Int'l Union*, 646 F. Supp. 2d 91, 93 (D.D.C. 2009), and only when "the movant, by a clear showing, carries the burden of persuasion." *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997). In order to issue a preliminary injunction, the moving party must demonstrate "1) a substantial likelihood of success on the merits, 2) that it would suffer irreparable injury if the injunction is not granted, 3)

that an injunction would not substantially injure other interested parties, and 4) that the public interest would be furthered by the injunction." *Mova. Pharm. Corp. v. Shalala*, 140 F.3d 1060, 1066 (D.C. Cir. 1998). Importantly, the purpose of a preliminary injunction "is merely to preserve the relative positions of the parties until a trial on the merits can be held," *Univ. of Tex. V. Camenisch*, 451 U.S. 390, 395 (1981)), and any relief to be granted "must be narrowly tailored to the harm shown," *Neb. Dep't of Health & Human Servs. v. U.S. Dep't of Health & Human Servs.*, 435 F.3d 326, 330 (D.D.C. 2006) (overturning injunctive relief ordered by district court where relief granted was not part of plaintiff's complaint); s*ee also IBT/HERE Emp. Representatives' Council v. Gate Gourmet Div. Americas*, 377 F. Supp. 2d 54, 59 (D.D.C. 2005) ("any injunction that the court issues must be carefully circumscribed and tailored to remedy the harm show.").

Plaintiff's motion here seeks relief that is not only equivalent to, but exceeds the relief he would get should he succeed on the merits. Mr. Brown asks the Court to issue a preliminary injunction against the BOP "to cease and desist its forced psychological treatment prolonged isolation regiment [sic] and its retaliation against plaintiff for refusing the unlawful treatment." Mot. Prelim. Inj. 1. But "[a] preliminary injunction is just that—preliminary. It does not substitute for a trial, and its usual office is to hold the parties in place until a trial can take place." *Cobell v. Norton*, 391 F.3d 251, 261 (D.C. Cir. 2004) *See also Dressler v. Wilson*, 144 F. Supp. 373, 376 (D.D.C. 1957) (preliminary injunctions should be "very rarely allowed in cases where the temporary relief would, in effect, be the same as that which would be accorded by a final judgment if the plaintiff prevailed at the trial.") The only claim to which this motion could potentially be related is plaintiff's APA claim against the BOP, in which he seeks an order forcing them to respond to his petition to repeal Program Statement 5210.17. Am. Compl. at 5.

However, even if plaintiff succeeded on the merits, the relief to which he would be entitled would merely be a response to his petition to repeal. Defendant BOP could—and presumably would—deny his petition. Because a preliminary injunction would far exceed the relief plaintiff would get if he succeeded on the merits, it will not be granted.

Even were the scope of plaintiff's injunction limited to relief this Court would be within its power to grant, his motion is moot. Plaintiff has been transferred from FCI-Talledaga to an Administrative Max prison in Florence, CO, Change Address 1, ECF No. 37, where he is no longer subjected to the alleged "psychological torture" he was suffering in the SMUs at FCI-Talledaga. This Court would be remiss to issue an order freeing plaintiff from a program from which he has he already been released.

### D.     Plaintiff's Motion for Partial Summary Judgment

Plaintiff moves for summary judgment on his FOIA claim against the FBI. Part. Summ. J. In his motion, plaintiff argues that FBI "has been acting in bad faith and in violation of [FOIA] since November 2001," claiming that "[t]he records [he has been requesting] are not exempt from disclosure." *Id.* at 5.

Summary judgment should be granted when the "materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations, . . . admissions, interrogatory answers, or other materials" show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a)–(c). This standard requires more than the mere existence of *some* factual dispute between the parties; "the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). "A fact is 'material' if a dispute over it might affect the outcome of a suit under the governing law." *Holcomb v. Powell*, 433 F.3d 889, 895

(D.C. Cir. 2006). "An issue is 'genuine' if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Doe v. IRS*, 706 F. Supp. 2d 1, 5 (D.D.C. 2009) (citing *Anderson*, 477 U.S. at 248).

The record, though sparse, demonstrates that plaintiff has not carried the burden necessary for summary judgment to issue. Genuine issues of material fact exist and summary judgment for a FOIA plaintiff is improper where "the record lacks sufficient detail as to the nature of the documents held by [the agency] and the exemptions that may or may not justify disclosure." *Santos v. DEA*, 357 F. Supp. 2d 33, 38 (D.D.C. 2004). Plaintiff's claim here is little more than a bald assertion that the FBI acted improperly and in bad faith by claiming inapplicable exemptions. Part. Summ. J. at 5. Although "summary judgment is appropriate for a FOIA plaintiff when the requested material, 'even on the agency's version of the facts, falls outside the proffered exemption,'" *Trulock v. DOJ*, 257 F. Supp. 2d 48, 50 (D.D.C. 2003) this court is required to draw all inferences in favor of the non-moving party, *Matsuhita*, 475 U.S. at 587. Plaintiff has failed to point to any documents or any part of the record to show what the exemptions the FBI claimed were, let alone that those claims were erroneous. While he may be able to establish that the agency acted improperly and in bad faith at trial, plaintiff cannot demonstrate that there is no genuine issue as to these material facts, and his motion is denied.

### E.     Plaintiff's Remaining FOIA Claim

Defendants have asked the Court to dismiss the FBI from plaintiff's remaining FOIA claim, arguing that "the only proper party against which Plaintiff may seek relief under FOIA in this action is Defendant DOJ." Mot. Dismiss 17. A small number of courts in this circuit have held that the cabinet-level agency should be substituted for the component agency as the defendant in a FOIA action. *See, e.g.*, *Judicial Watch, Inc. v. FBI*, 190 F. Supp. 2d 29, 31

(D.D.C. 2002). This Court does not think that necessary, however, given the plain meaning of the statute[3] and the number of cases in this circuit which have held that the FBI may be a defendant for the purposes of FOIA. S*ee Peralta v. U.S. Attorney's Office*, 136 F.3d at 173 (D.C. Cir. 1998) ("we have observed previously that FBI is 'clearly . . . covered' by the FOIA") (citing *McGehee v. CIA*, 697 F.2d 1095 (D.C.  Cir. 1983)); *Cloonan v. Holder*, No. 08-cv-700, 2011 U.S. Dist. LEXIS 22993, at *21 (D.D.C. Mar. 8, 2011) ("naming components as defendants . . . is appropriate since the statute's plain language is clear"); *Peralta v. U.S. Attorney's Office*, 69 F. Supp. 2d 21, 26 (D.D.C. 1999) ("given that many of the documents at issue in this case originated with FBI . . . the Court finds that FBI is a proper defendant in this case."); s*ee also Lair v. Dep't of Treasury*, No. 03-cv-827, 2005 U.S. Dist. LEXIS 4645, at *8 (D.D.C.  Mar. 21, 2005) ("naming components [as defendants] is proper"). Substitution could also "impede the purposes of the FOIA by preventing persons from receiving information in the most direct and efficient manner." *Peralta*, 69 F. Supp. 2d at 26. No court has found that FOIA does not apply to the FBI, *see, e.g.*, *Judicial Watch, Inc. v. FBI*, 190 F. Supp. 2d 29, and the fact that the FBI "has litigated numerous FOIA cases in its own name before the Supreme Court, this court, and other circuit courts, with the DOJ as one of its components appearing as counsel," *Peralta*, 136 F.3d at 173-74, also suggests that substitution would be an unnecessary distraction. Because it is not required by statutory language nor binding precedent, the motion is denied.

To ensure that defendant's "allegations of exempt status are adequately justified," *Vaughn v. Rosen*, 484 F.2d 820, 826 (D.C. Cir. 1973), it will be necessary for defendant FBI to produce a *Vaughn* index for the documents requested in plaintiff's first FOIA claim.

---

[3] The Freedom of Information Act covers "each authority of the Government of the United States, whether or not it is within or subject to review by another agency." 5 U.S.C. § 551(1). *See also id.* at § 552(f)(1) (agency "includes any executive department, military department, Government corporation, Government controlled corporation, or other establishment in the executive branch of the Government . . . or any independent regulatory agency").

**V. CONCLUSION**

Upon full consideration of the parties' filings, applicable law, and the record herein, defendants' motions to dismiss are granted, except insofar as they request the dismissal of defendant Federal Bureau of Investigation. Plaintiff's motion to strike and for a more definite statement is denied, and his motions for a preliminary injunction and partial summary judgment are denied. His motion for leave to amend is denied as futile as to all claims, except that it is granted insofar as it seeks to add a FOIA claim against the Tax Division of defendant DOJ. His FOIA claim against the FBI will also be permitted to go forward, and the court asks defendants FBI and DOJ to produce *Vaughn* indexes for the documents that are the subject of plaintiff's FOIA requests.

A separate Order consistent with these findings shall issue this date.

Signed by Royce C. Lamberth, Chief Judge, on June 24, 2011.