**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| |
|---|
| TIMOTHY BROWN,<br><br>                     Plaintiff,<br><br>    v.<br><br>FEDERAL BUREAU OF<br>INVESTIGATION,<br><br>                   Defendant. |

Civil Action No. 10-1292 (RCL)

<u>**MEMORANDUM OPINION**</u>

This action, which is brought under the Freedom of Information Act ("FOIA"), 5 U.S.C.

§ 552, is before this Court on defendant's Motion [66] to Dismiss or in the Alternative for

Summary Judgment, plaintiff's Motion [74] for Rule 11 Sanctions, and plaintiff's Motion [80] to

Supplement Plaintiff's Motion for Sanctions.  For the reasons set forth below, defendant's

motion [66] will be GRANTED, plaintiff's Motion [74] for Sanctions will be DENIED, and

plaintiff's Motion [80] to Supplement will be DENIED.

### I.        Background

This opinion focuses solely on plaintiff's remaining FOIA claim against the FBI, because

all other causes of action have been dismissed.  *See* Mem. Op. [40]; Order granting Tax

Division's Motion to Dismiss [63].

On August 21, 2007, Timothy Brown ("plaintiff") submitted a FOIA request to the

FBIHQ for "a copy of, [*sic*] all records contained in your files and/or outside agent files and/or

related files which contain and/or pertain to the following: (1) Timothy Demitri Brown, (2)

Operation Disturb the Peace, and (3) BLSB (LA) Inc."  On a subsequent request form, plaintiff

withdrew his request for "Operation Disturb the Peace" and "BLSB (LA) Inc.," leaving only the

request for "Timothy Demitri Brown."  *See* Decl. of Dennis J. Argall ("Argall Decl."), Ex. B.  In

response, FBIHQ informed plaintiff that a search of its Central Records System ("CRS") yielded

no responsive documents.  Plaintiff administratively appealed to the Office of Information and

Privacy ("OIP"), but FBIHQ's determination was affirmed.  OIP suggested to plaintiff that he

submit requests to the FBI's Houston and New Orleans ("FBI-NOFO") offices.  On October 31,

2007, plaintiff submitted a FOIA request to FBI-NOFO for records pertaining to himself,

"Operation Disturb the Peace," and other reports.  FBI-NOFO made three initial disclosures to

plaintiff: 658 pages on January 21, 2009, 534 pages on June 18, 2009, and 438 pages on

September 16, 2009.  Redactions in these releases were made under the Privacy Act and FOIA

exemptions 2, 3, 4, 6, 7(C), 7(D), and 7(E).  Plaintiff sent an appeal to OIP on September 16,

2009, which was denied.

Plaintiff filed his initial complaint [1] on July 30, 2010.  Subsequently, FBI searched its

Electronic Surveillance ("ELSUR") records and released three audio CDs on November 4, 2010,

withholding information pursuant to the Privacy Act and FOIA exemptions 6 and 7(C).  Plaintiff

appealed this response to OIP on November 9, 2009, which was closed administratively because

of his past-due fees.  Plaintiff filed an Amended Complaint [18] on November 30, 2010 and a

Second Amended Complaint [42] on June 24, 2011.

Subsequently, FBI conducted another search, which revealed that some files it had

previously mentioned to plaintiff had not been processed.  After processing about another 800

pages, FBI released 341 pages to plaintiff on November 30, 2011 (withholding information

pursuant to the Privacy Act and FOIA exemptions 3, 6, 7(C), 7(D), and 7(E)).

FBI collaborated with two other agencies in response to plaintiff's request.  FBI referred three documents to the Drug Enforcement Agency ("DEA") for review.  DEA instructed FBI to withhold information on six pages under FOIA exemption 7(C).  FBI also forwarded 21 pages to the Marshals Service for direct response to plaintiff.  On October 25, 2011, the Marshals Service released documents to plaintiff (withholding information pursuant to FOIA exemptions 6, 7(C), and 7(E)).

## II.        Motion to Dismiss

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  A motion to dismiss is appropriate when the complaint fails "to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  Such a failure occurs when the complaint is so factually deficient that the plaintiff's claim for relief is not plausible on its face.  *Bell Atlantic v. Twombly*, 550 U.S. 544, 570 (2007).  "Asking for plausible grounds to infer [a right to relief] does not impose a probability requirement at the pleading stage; it simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of [the right to relief]."  *Id.* at 556.  Though facts in a complaint need not be detailed, Rule 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  The Court must accept all factual statements as true when deciding a 12(b)(6) motion to dismiss.  *Id.* at 678.  However, conclusory legal allegations devoid of any factual support do not enjoy the same assumption of truth.  *Id.* at 679.   "Factual allegations must be enough to raise a right to relief above the speculative level."  *Twombly*, 550 U.S. at 555.

Plaintiff filed his Second Amended Complaint [42] *pro se*.  "A document filed *pro se* is to be liberally construed and a pro se complaint, however inartfully pleaded, must be held to less

stringent standards than formal pleadings drafted by lawyers." *Erikson v. Pardus*, 551 U.S. 89,

94 (2007) (citations omitted).  Nevertheless, a *pro se* plaintiff's complaint "must present a claim

on which the Court can grant relief." *Utterback v. Geithner*, 754 F. Supp. 2d 52, 54 (D.D.C.

2010) (citing *Chandler v. Roche*, 215 F. Supp. 2d 166, 168 (D.D.C. 2002)).

>    In this case, the remaining cause of action is succinct enough to reprint here:

> 12. Federal Bureau of Investigations [*sic*] has unlawfully refused and/or withheld
>     records in the agency's files concerning plaintiff.
> 13. Plaintiff filed a FOIA request with the agency on November 2001 and
>     October 31, 2007.
> 14. Plaintiff's request was assigned number 1091943.
> 15. The agency has unlawfully withheld the requested records and/or claimed
>     inapplicable exemptions.

>    Pl.'s Second Am. Compl. ¶¶ 12–15.  Just as in *Iqbal*, "[i]t is the conclusory nature of

[plaintiff's] allegations, rather than their extravagantly fanciful nature, that disentitles them from

the presumption of truth." *Iqbal*, 556 U.S. at 681.  The only factual allegations in this complaint

are the dates plaintiff filed his FOIA request and the number his request was assigned.  For the

purposes of this 12(b)(6) motion, the Court accepts these facts as true.  *See Iqbal*, 556 U.S. at

678.  However, the Court does not accept as true paragraphs 12 and 15, which are legal

conclusions.  *See id.* at 680 (considering the plaintiff's allegation to be a legal conclusion

undeserving of assumption of truth).  This court is willing to accept as true the empirical facts

plaintiff presents in his pleadings, but to accept as true that defendant unlawfully withheld

records would be to decide the case on its merits without a trial.  This Court refuses to do so.

>    Because this Court will not assume the truth of paragraphs 12 and 15, it must decide

whether the remaining facts, accepted as true, state a claim upon which relief can be granted.

The complaint must supply "enough fact to raise a reasonable expectation that discovery will

reveal evidence" of wrongdoing and raise plaintiff's right to relief above pure speculation.

*Twombly*, 550 U.S. at 555–56.  The facts that plaintiff presents in this case do not lead to a reasonable expectation that discovery will reveal evidence of wrongdoing and a right to relief. Nothing about plaintiff's FOIA number and filing dates suggests a right to recovery.  Asserting that the FBI "unlawfully withheld the requested records and/or claimed inapplicable exemptions" does not rise above pure speculation, for plaintiff has not supported his contention with even a scintilla of factual evidence.

However, the Court recognizes that plaintiff could amend his Complaint with the required factual material, including affidavits and the communication between himself and the FBI.  Because these documents are already in the Court's possession, there is no reason to wait for plaintiff to file yet another amended Complaint.  Despite its objections, defendant has proceeded with litigation and disclosed the very documents that would provide the factual foundation for a proper Complaint.  In the interest of judicial efficiency,[1] defendant's Motion to Dismiss will be denied and instead, the Court will consider its Motion for Summary Judgment.

### Motion for Summary Judgment

Summary judgment is appropriate when the moving party demonstrates that "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).  In determining whether a genuine issue of material fact exists, the trier of fact must view all facts, and all reasonable inferences drawn therefrom, in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986).  In order to defeat summary judgment, a factual dispute must be capable of affecting the substantive outcome of the case and be supported by sufficiently admissible

---

[1] The Federal Rules of Civil Procedure begin with the fundamental mandate that the rules "should be construed and administered to secure the just, speedy, and inexpensive determination of every action and proceeding."  Fed. R. Civ. P. 1.  The Court has determined that deciding this case on Summary Judgment would best fulfill this rule.

evidence that a reasonable trier of fact could find for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986).

An agency may be entitled to summary judgment in a FOIA case if it demonstrates that no material facts are in dispute, it has conducted an adequate search for responsive records, and each responsive record that it has located has either been produced to the plaintiff or is exempt from disclosure. *See Weisberg v. DOJ*, 705 F.2d 1344, 1351 (D.C. Cir. 1981). To meet its burden, a defendant may rely on reasonably detailed and non-conclusory declarations. *See McGehee v. CIA*, 697 F.2d 1095, 1102 (D.C. Cir. 1983).

In a FOIA case, the court determines *de novo* whether an agency properly withheld information under a claimed exemption. *Mead Data Cent., Inc. v. Dep't of Air Force*, 566 F.2d 242, 251 (D.C. Cir. 1977). "The underlying facts are viewed in the light most favorable to the [FOIA] requester," *Weisberg*, 705 F.2d at 1350, and the exemptions must be narrowly construed. *FBI v. Abramson*, 456 U.S. 615, 630 (1982). However, courts generally defer to agency expertise in national security matters. *See, e.g., Taylor v. Dep't of the Army*, 684 F.2d 99, 109 (D.C. Cir. 1982) (according "utmost deference" to classification affidavits); *Krikorian v. Dep't of State*, 984 F.2d 461, 464–65 (D.C. Cir. 1993) (acknowledging "unique insights" of executive agencies responsible for national defense and foreign relations). While the agency must not withhold information in bad faith, *Military Audit Project v. Casey*, 656 F.2d 724, 738 (D.C. Cir. 1981), the affidavits submitted by the agency to demonstrate the adequacy of its response are presumed to be in good faith. *Ground Saucer Watch, Inc. v. CIA*, 692 F.2d 770, 771 (D.C. Cir. 1981).

In this case, defendant accurately states that plaintiff's allegations are "not entirely clear from his complaint." Def.'s Mot. [66] to Dismiss or in the Alternative for Summ. J. at 7.

However, for the purposes of deciding summary judgment, this Court will interpret plaintiff's

Complaint as alleging both an inadequate search and improper use of exemptions.

### a.  Adequacy of Search

In responding to a FOIA request, an agency must conduct a reasonable search for

responsive records.  *Oglesby v. U.S. Dep't of Army*, 920 F.2d 57, 68 (D.C. Cir. 1990); *Weisberg*,

705 F.2d at 1352.  An agency is not required to search every records system, but need only

search those systems in which it believes responsive records are likely located.  *Oglesby*, 920

F.2d at 68.  The adequacy of the search is determined by whether it was "reasonably calculated

to discover the requested documents, not whether it actually uncovered every document extant."

*SafeCard Servs., Inc. v. SEC*, 926 F.2d 1197, 1201 (D.C. Cir. 1991).  "Mere speculation that as

yet uncovered documents may exist does not undermine the finding that the agency conducted a

reasonable search for them."  *Id.*

To demonstrate the reasonableness of its search, the agency may submit nonconclusory

affidavits that explain in reasonable detail the scope and method of the agency's search.

*Steinberg v. DOJ*, 23 F.3d 548, 551 (D.C. Cir. 1994).  These affidavits are afforded a

"presumption of good faith, which cannot be rebutted by 'purely speculative claims about the

existence and discoverability of other documents.'"  *SafeCard Servs.*, 926 F.2d at 1200 (quoting

*Ground Saucer Watch*, 692 F.2d at 771).

In this case, defendant submitted a declaration from Dennis Argall ("Argall Decl.")

setting forth, in great detail, the searches conducted on plaintiff's behalf.  Because plaintiff has

given no evidence to the contrary, this declaration is presumed to be in good faith.  *See Safecard

Servs.*, 926 F.2d at 1200.  First, Mr. Argall sets forth the procedural history of plaintiff's FOIA

request with accompanying exhibits.  Argall Decl. ¶¶ 9–45.  Next, he explains the FBI's Central

Records System ("CRS") as well as Electronic Surveillance ("ELSUR") indices, both of which were searched. *Id.* ¶¶ 46–59. Finally, he sets forth detailed page-by-page description of the exemptions cited. *Id.* ¶¶ 60–100.

The scope and method of defendant's search was reasonable. Plaintiff originally filed his FOIA request with FBIHQ. *Id.* ¶ 10. At the time of the request, FBI policy was to only search records at the office to which the FOIA request was sent. *Id.* ¶ 16 n.7. No responsive records were found at FBIHQ, but defendant suggested that plaintiff send requests to FBI's Houston ("HOFO") and New Orleans ("NOFO") offices. *Id.* ¶ 16. During the administrative phase of plaintiff's FOIA request, defendant released a total of 1,630 pages out of 3,843 pages reviewed. Argall Decl. ¶ 4. After the commencement of litigation, an additional 801 pages were reviewed and 341 pages were released. *Id.* At least one release was made despite plaintiff's failure to pay fees. *Id.* ¶¶ 43, 45.

The reasonableness of defendant's search is bolstered by FBIHQ's encouragement to plaintiff to request records from NOFO, its continued releases of documents, and the completeness of its *Vaughn* index. *See id.* ¶¶ 60-100. Agency affidavits are not rebuttable by purely speculative allegations. *SafeCard Servs.*, 926 F.2d at 1200. Because plaintiff's pleading simply states that defendant "has unlawfully refused and/or withheld records," the Court has no difficulty finding that defendant's search was adequate. While it did not yield disclosure of the exact documents plaintiff insists should be disclosed, defendant's declarations demonstrate that its searches were reasonably calculated to recover all documents. The legal standard has been met, and contrary to plaintiff's wishes, this Court will not demand more.

*b.  Appropriateness of Exemptions*

Summary judgment is only proper if the agency's search was adequate *and* FOIA

exemptions were properly invoked.  *See King v. DOJ*, 830 F.2d 210, 217 (D.C. Cir. 1987).

Defendant submitted the Argall Decl., William E. Bordley Decl. ("Bordley Decl."), and

accompanying *Vaughn* indices to prove the adequacy of its exemptions.  The Court will examine

defendant's justification below.

*1.  Exemption 2*

Exemption 2 protects from disclosure information "related solely to the internal

personnel rules and practices of an agency."  5 U.S.C. § 552(b)(2).  The Supreme Court's recent

decision in *Milner v. U.S. Dep't of the Navy*, 131 S. Ct. 1259 (2011) eliminates the distinction

between the formerly-recognized "High 2"[2] and "Low 2"[3] exemptions.  *Id.* at 1263.  Instead, the

Court ruled that "Low 2 is all of 2 (and that High 2 is not 2 at all . . . .)"  *Id.* at 1265.  It

interpreted exemption 2 to encompass "only records relating to issues of employee relations and

human resources."  *Id.* at 1271.

In this case, defendant withholds the internal phone numbers of FBI Special Agents

("SAs"), which it claims relate solely to the FBI's internal practices.  Argall Decl. ¶¶ 68–69.  The

business numbers are used in the performance of FBI SAs' duties.  *Id.* ¶ 68.  Defendant asserts

that the public interest in these numbers is non-existent, and that releasing them could expose

FBI SAs to harassment.  *Id.* ¶ 69.  This explanation of why exemption 2 is appropriate does not

comport with *Milner*.  In that case, the Court emphasized that the "practice of 'construing FOIA

exemptions narrowly' stands on especially firm footing with respect to Exemption 2."  *Milner*,

131 S. Ct. at 1265–66 (internal citation omitted) (quoting *DOJ v. Landano*, 508 U.S. 165, 181

---

[2] "High 2" protected information the disclosure of which would risk circumvention of the law.
[3] "Low 2" protected materials concerning human resources and employee relations.

(1993)).  Narrow construal of § 552(b)(2), particularly the phrase "personnel rules and practices of an agency" demands that phone numbers fall out of its ambit.  Phone numbers are not "material[s] concerning employee relations or human resources: 'use of parking facilities or regulations of lunch hours, statements of policy as to sick leave, and the like.'"  *Id.* at 1262 (quoting *Dep't of Air Force v. Rose*, 425 U.S. 352, 363 (1976)).  Defendant cites other more appropriate exemptions under which it withholds the FBI SAs' phone numbers.  However, since the phone numbers are neither "rules" nor "practices," exemption 2 is not one of them.

### 2.  Exemption 3

Exemption 3 covers records that are

> specifically exempted from disclosure by statute . . ., provided that such statute (A) requires that the matters be withheld from the public in such a manner as to leave no discretion on the issue, or (B) establishes particular criteria for withholding or refers to particular types of matters to be withheld.

5 U.S.C. § 552(b)(3).  When an agency invokes Exemption 3, it must submit affidavits that provide "the kind of detailed, scrupulous description [of the withheld documents] that enables a District Court judge to perform a de novo review."  *Church of Scientology of Cal., Inc. v. Turner*, 662 F.2d 784, 786 (D.C. Cir. 1980).  Though the affidavits need not contain factual descriptions the public disclosure of which would endanger the agency's mission, *Vaughn v. Rosen* 484 F.2d 820, 826–27 (D.C. Cir. 1973), neither can they be vague or conclusory.  *Church of Scientology*, 662 F.2d at 787.  This Court seeks to balance the inherent tension between the public's interest in government goings-on with the protection of an agency's legitimate need for privacy.  As in *Vaughn*, this Court relies on the agency to help strike the balance by providing an appropriately detailed affidavit.  *See Vaughn*, 484 F.2d at 826–27.

Defendant withholds information pursuant to several statutes.  First, it withholds files that "explicitly disclose[] matters occurring before a Federal Grand Jury" under Federal Rule of

Criminal Procedure Rule 6(e).  Argell Decl. ¶ 71.  The information specifies the names and identifying information of those subpoenaed for testimony before a federal grand jury, as well as subpoenaed records.  *Id.*  The statute states, "any federal law enforcement, intelligence, protective . . . or national security official" to whom grand jury information has been disclosed "may use the information only as necessary in the conduct of that person's official duties . . . ." Fed. R. Crim. P. 6(e)(3)(D)(i).  The FBI is a law enforcement agency by its very nature, but public disclosure of grand jury information is certainly not within the purview of its official duties.  Therefore, exemption 3 was properly invoked regarding grand jury information under Rule 6.

Next, defendant withholds the identities of those who were the targets of electronic surveillance pursuant to 18 U.S.C. §§ 2510-2520 ("Title III"), which prohibits disclosure of identities of targets of court-ordered lawful electronic surveillance.  *Argall Decl.* ¶¶ 72–73. "Title III . . . 'falls squarely within the scope' of Exemption 3."  *Davis v. DOJ*, 968 F.2d 1276, 1280–81 (D.C. Cir. 1992) (quoting *Lam Lek Chong v. DEA*, 929 F.2d 729, 733–34 (D.C. Cir. 1991)).  Plaintiff gives no adequate legal objection; therefore, this Court finds exemption 3 to be properly invoked regarding the identifying information of those targeted by electronic surveillance pursuant to Title III.

Finally, defendant withholds pen register information pursuant to 18 U.S.C. § 3123. Argall Decl. ¶ 74.  "An order authorizing or approving the installation and use of a pen register . . . shall direct that the order be sealed until otherwise ordered by the court . . . ."  18 U.S.C. § 3123(d)(1).  Defendant withholds "applications and subsequent court orders for pen registers, information regarding the target of pen registers, and reports generated as the result of the pen registers."  Argall Decl. ¶ 75.  This information falls squarely under § 3123(d)(1), and in light of

no legal objection from plaintiff, this Court finds that the pen register information was properly held under exemption 3.

### 3. Exemption 6

Not relying solely on exemption 2, defendant withholds the phone numbers of FBI SAs under exemption 6 as well.  5 U.S.C. § 552(b)(6) exempts from disclosure "personnel and medical files and similar files" if its disclosure would constitute a clearly unwarranted invasion of personal privacy.  The phrase "similar files" should be interpreted broadly and exempts all information that "applies to a particular individual." *Dep't of State v. Wash. Post Co.*, 456 U.S. 595, 599–603 (1982).  However, information about federal employees generally does not qualify for protection. *See Arieff v. Dep't of the Navy*, 712 F.2d 1462, 1467–68 (D.C. Cir. 1983) (declining to protect information about a large group of individuals); *Aguirre v. SEC*, 551 F. Supp. 2d 33, 54 (D.D.C. 2008) ("Correspondence does not become personal solely because it identifies government employees.").  While "similar files" must be construed broadly, it must not become devoid of meaning altogether.  There must be *some* personal information that relates to a particular individual for exemption 6 protection to be warranted.

This Court has previously held that "a name and work telephone number is not personal or intimate information, such as a home address or a social security number, that normally would be considered protected information under FOIA Exemption 6." *Leadership Conference on Civil Rights v. Gonzles*, 404 F. Supp. 2d 246, 257 (D.D.C. 2005).  Work telephone numbers are different from personal information that would be protected under exemption 6, such as "place of birth, date of birth, date of marriage, employment history, and comparable data." *See Nat'l Ass'n of Retired Fed. Emps. v. Horner*, 879 F.2d 873, 875 (D.C. Cir. 1989).  The phone number is, by defendant's admission, a *work* number.  It is not a personal number.  Because the phone numbers

12

are not "similar files," exemption 6 is also inappropriate.  Fortunately for defendant, it has one more bite of the FOIA apple regarding the phone numbers: exemption 7(C).

### 4.  Exemption 7 (Generally)

Exemption 7 protects from disclosure "records or information compiled for law enforcement purposes," but only to the extent that disclosure of such records would cause an enumerated harm listed in exemption 7's subsections.  5 U.S.C. § 552(b)(7); *see Abramson*, 456 U.S. at 622.  In assessing whether records are compiled for law enforcement purposes, the "focus is on how and under what circumstances the requested files were compiled, and whether the files sought related to anything that can fairly be characterized as an enforcement proceeding." *Jefferson v. DOJ*, 284 F.3d 172, 176–77 (D.C. Cir. 2002) (citations and internal quotations omitted).  The connection between an individual and potential violation of federal law or security risk must be "based on information sufficient to support at least a 'colorable claim' of rationality."  *King*, 830 F.2d at 229.

### 5.  Exemption 7(C)

Exemption 7(C) protects from disclosure information in law enforcement records that "could reasonably be expected to constitute an unwarranted invasion of personal privacy."  5 U.S.C. § 552(b)(7)(C).

Defendant asserts exemption 7(C) in regard to many documents.  First, the Court will return to the FBI SA phone numbers that have yet to be properly withheld under a FOIA exemption.  *See supra*.  It looks like the third time is a charm.

### A.  FBI SA Phone Numbers

To qualify for non-disclosure, the information must first satisfy the exemption 7 threshold: it must have been compiled for law enforcement purposes.  The phone numbers at

issue are the work numbers of FBI SAs.  Because the purpose of the FBI is law enforcement, it is clear that its special agents' phone numbers were also created for law enforcement.  There is simply no other plausible purpose.

Having crossed the threshold, the Court now must determine whether an unwarranted invasion of personal privacy would accompany disclosure.  *See* § 552(b)(7)(C).  To make this determination, the Court must balance the privacy interests of the individuals with the public interest in disclosure.  *Beck v. DOJ*, 997 F.2d 1489, 1491 (D.C. Cir. 1993); *see also DOJ v. Reporters Comm. for Freedom of the Press*, 489 U.S 749, 762 (1989).  "The myriad of considerations involved in the Exemption 7(C) balance defy rigid compartmentalization;" therefore, bright line rules are discouraged, and courts must identify the specific circumstances relevant to each case.  *Stern v. FBI*, 737 F.2d 84, 91 (D.C. Cir. 1984).  Individuals have a "strong interest in not being associated unwarrantedly with alleged criminal activity."  *Id.* at 91–92. "[T]he only public interest relevant for purposes of Exemption 7(C) is one that focuses on 'the citizens' right to be informed about what their government is up to.'"  *Davis v. DOJ*, 968 F.2d 1276, 1282 (D.C. Cir. 1992) (quoting *Reporters Comm.*, 489 U.S. at 773).  "Even if a particular privacy interest is minor, nondisclosure is justified where . . . the public interest in disclosure is virtually nonexistent."  *Id.*

In the instant case, defendant claims that the internal phone numbers would serve no public interest, but that disclosure "could subject these individuals to harassing telephone calls . . . ."  Argall Decl. ¶¶ 68–69.  This Court finds any public interest in these internal numbers, which would in no way illuminate "what the government is up to," to be de minimis. While the likelihood of disruptive and harassing phone calls is debatable, the Court need not decide exactly how much privacy is being invaded.  *Any* amount of privacy expectation

outweighs the virtually nonexistent public interest.  *See Davis*, 968 F.2d at 1282.  Therefore, this Court finds that the FBI SA phone numbers were properly withheld pursuant to exemption 7(C).

### B. Names and Identifying Information of FBI SAs and Support Personnel

Next, defendant withholds the names and/or identifying information of FBI SAs and support personnel.  Argall Decl. ¶ 80.  Just as internal phone numbers were records compiled for law enforcement, the information defendant seeks to withhold here is directly related to the FBI and, consequently, law enforcement.  Plaintiff provides no objection to these documents being created for the purpose of law enforcement, and the Court deems them to have crossed the threshold.

Again, the Court must balance the privacy interest against the public interest.  To address plaintiff's argument that 7(C) cannot be invoked because "Chadwick McNeal signed a written waiver 'to release his identity,'" the Court points out that defendant appears to be protecting the privacy of individuals other than Mr. McNeal.  In fact, defendant seeks to withhold information regarding FBI SAs and support personnel, third parties, and government officials.  Argall Decl. ¶¶ 80, 83–88.  The information withheld goes well beyond Mr. McNeal's identity.  Therefore, plaintiff's objection is meritless.

Names and/or identifying information are often granted categorical exemption under 7(C).  *See, e.g.*, *SafeCard Servs.*, 926 F.2d at 1206.  In this case, plaintiff was convicted of narcotics-related charges and sentenced to life in prison.  Argall Decl. ¶ 7.  It is commonly known that drug crimes are often related to violence.  The risk of harassment and retaliation, in light of the potentially violent crimes that were being investigated, constitutes a legitimate privacy interest.  *See Stone v. FBI*, 727 F. Supp. 662, 664, 666 (D.D.C. 1990) (finding that even

decades-old grudges toward FBI officials can pose an unreasonable risk of harassment if names were disclosed).

Having established a significant privacy interest, the Court must determine if there is any public interest that can outweigh it. Disclosing names of FBI SAs and support personnel who "were responsible for conducting, supervising, and/or maintaining the investigative activities," Argall Decl. ¶ 80, might, *arguendo*, shed light to the public on "what their government is up to." However, this Court does not see how knowing the names of FBI agents can possibly outweigh the extremely strong privacy interest in not being harassed by violent criminals. In light of the employees' privacy interests, the potential for violence, and the insubstantial public interest in the names of clerical employees, defendant properly withholds the names and identifying information of FBI SAs and support personnel.

### C. Names and Identifying Information of Third Parties of Investigative Interest

Defendant withholds the "names and identifying information of third parties who were of investigative interest to the FBI." Argall Decl. ¶ 83. Whether or not these investigated individuals were ever charged with a crime, "the mention of an individual's name in a law enforcement file will engender comment and speculation and carries a stigmatizing connotation." *Fitzgibbon v. CIA*, 911 F.2d 755, 767 (D.C. Cir. 1990) (quoting *Branch v. FBI*, 658 F. Supp. 204, 209 (D.D.C. 1987)). The identities of third-party suspects are routinely withheld. *See, e.g.*, *Spirko v. USPS*, 147 F.3d 992, 98–99 (D.C. Cir. 1998) (protecting suspects' fingerprints, interviews with law enforcement officers, and photographs). The privacy interest of third-party suspects, with the stigma associated with being part of an investigation, is much greater than any conceivable public interest. Therefore, withholding the names and identifying information of third parties of investigative interest is proper.

### D.  Names and Identifying Information of Law Enforcement Personnel

Defendant withholds the "names and/or identifying information of state and/or local law enforcement officers" and "non-FBI federal government personnel."  Argall Decl. ¶¶ 84–85. These employees were "acting in their official capacities and aided by the FBI in law enforcement efforts."  *Id.*  There is no question that this information was compiled for law enforcement purposes, and the employees' privacy interest outweighs the public interest in disclosure for the same reasons as the FBI SAs and support personnel.  *See supra* discussion, § III(b)(5)(B) of this opinion.  Therefore, defendant properly invoked exemption 7(C) regarding the names and identifying information of state and local law enforcement personnel and non-FBI federal government personnel.

### E.  Names and Identifying Information of Third Parties

Defendant withholds "the names and/or identifying information concerning third parties merely mentioned in documents related to the FBI's investigations of plaintiff" as well as "third parties who provided information to the FBI in the course of the investigation of plaintiff." Argall Decl. ¶¶ 87–88.   This Circuit and many others have routinely upheld the withholding of third party names mentioned in law enforcement files.  *See, e.g.*, *SafeCard Servs.*, 926 F.2d at 1206; *Rugiero v. DOJ*, 257 F.3d F.3d 534, 552 (6th Cir. 2001); *Neely v. FBI*, 208 F.3d 461, 464 (4th Cir. 2000).  Once again, the Court must conduct a balancing test between the privacy interest of the third parties and the public's interest in knowing what its government is up to. "[T]hird parties mentioned in FBI investigative records 'may have a . . . strong interest in non-disclosure.'"  *Davis*, 968 F.2d at 1281 (quoting *King*, 830 F.2d at 233).  This Circuit wrote that it could "easily imagine the embarrassment and reputational harm that would be caused from disclosure" of sensitive information gathered by the FBI relating to third parties.  *Id.*  The

privacy interest of those who have provided information to the FBI in a drug investigation is all the more elevated.  This Court finds that the privacy interest of third parties is high and can only be overcome by an even more substantial public interest in their identities.

Plaintiff alleges that, "[d]efendants continue to provide this court with knowingly false, fabricated and irrelevant information and have implicated this court, Judge Lamberth, as a willing participant in its cover-up of the murder of a state judge by the FBI, the fabrication of evidence and their continued obstruction of justice . . . .  Plaintiff must assume that this judge is the "dept's pitbull on the bench . . . ."[4]  Pl.'s Reply [73] to Def.'s Mot. to Dismiss or in the Alternative for Summ. J. 1.

> When such governmental misconduct is alleged as the justification for disclosure, the public interest is "insubstantial" unless the requester puts forward "compelling evidence that the agency denying the FOIA request has engaged in illegal activity" and shows that the information sought "is necessary in order to confirm or refute that evidence."

*Davis*, 968 F.2d at 1282 (quoting *SafeCard Servs.*, 926 F.2d at 1205–06).  The Court finds no evidence whatsoever, let alone "compelling" evidence, that there is a grand conspiracy between the executive and judicial branches to cover up a murder and obstruct justice.  Therefore, the public interest is insubstantial and is not outweighed by the substantial third party privacy interest.  *See id* at 1281.  Exemption 7(C) was properly invoked regarding third party identifying information.

### F.  United States Marshals Service Documents

The FBI referred twenty-one documents to the United States Marshals Service ("USMS") for review and direct reply to plaintiff.  Bordley Decl. ¶ 2.  The documents were related to asset

---

[4] The Court assumes that plaintiff was not referring to the pop star Pitbull, who has no known connection with the FBI.  Additionally, a literal reference to a pit bull is completely lost on the Court.  The Court cautions plaintiff to use canine metaphors only when they effectively advance his argument.  The Court will provide an example: "Plaintiff's argument is as weak as a toy poodle."

seizure by law enforcement agencies. *Id.* ¶ 3. USMS asserted exemption 7(C) to withhold the names and telephone numbers of government employees and third parties. *Id.* ¶¶ 5, 8. The Court finds asset seizure by the USMS to fall squarely in the realm of law enforcement. Additionally, the privacy interest of third parties outweighs any public interest in disclosure. *See supra* discussion, § III(b)(5)(E) of this opinion.

### 6. Exemption 7(D)

Exemption 7(D) protects from disclosure those records or information compiled for law enforcement purposes that

> could reasonably be expected to disclose the identity of a confidential source . . . [who] furnished information on a confidential basis, and, in the case of a record or information compiled by a criminal law enforcement authority in the course of a criminal investigation . . ., information furnished by a confidential source.

5 U.S.C. § 552(b)(7)(D). There is no assumption that a source is confidential for purposes of Exemption 7(D) whenever a source provides information to a law enforcement agency in the course of a criminal investigation. *See Landano*, 508 U.S. at 181. Rather, a source's confidentiality is determined on a case-by-case basis. *Id.* at 179–80. "A source is confidential within the meaning of 7(D) if the source provided information under an express assurance of confidentiality or in circumstances from which such an assurance could reasonably be inferred." *Williams v. FBI*, 69 F.3d 1155, 1159 (D.C. Cir. 1995) (citing *Landano*, 508 U.S. at 172).

Confidentiality can be established expressly or impliedly. Regardless of which type of confidentiality is asserted, the focus should always be on whether the *source* of the information spoke with the understanding of confidentiality, not whether the *document* is generally thought to be confidential. *Landano*, 508 U.S. at 172. To claim express confidentiality, an agency must offer "probative evidence that the source did in fact receive an express grant of confidentiality." *Campbell v. DOJ*, 164 F.3d 20, 34 (D.C. Cir. 1998) (quoting *Davin v. DOJ*, 60 F.3d 1043, 1061

(3d Cir. 1995)).  This evidence can take many different forms, but it must "permit meaningful judicial review by providing a sufficiently detailed explanation" for the invocation of Exemption 7(D).  *Id.*

While express confidentiality is relatively easy to spot, implied confidentiality warrants a more nuanced analysis.  "A source is confidential within the meaning of Exemption 7(D) if the source 'provided information . . . in circumstances from which such an assurance [of confidentiality] could be reasonably inferred."  *Landano*, 508 U.S. at 172 (quoting S.Rep. No. 93-1200, at 13, U.S. Code Cong. & Admin. News pp. 6267, 6291).  Implied confidentiality exists when "the source furnished information with the understanding that the FBI would not divulge the communication except to the extent the Bureau thought necessary for law enforcement purposes."  *Id.* at 174.

This Court has stated that "[t]he nature of the crime investigated and informant's relation to it are the most important factors in determining whether implied confidentiality exists."  *Amuso v. DOJ*, 600 F. Supp. 2d 78, 100 (D.D.C. 2009).  The "violence and risk of retaliation attendant to drug trafficking warrant an implied grant of confidentiality to a source who provides information to investigators."  *Lasko v. DOJ*, 684 F. Supp. 2d 120, 134 (D.D.C. 2010).  With these principles in mind, this Court turns to the facts at hand.

In the instant case, defendant asserts exemption 7(D) "to protect the names, identifying information, and investigative information provided by third parties under an implied assurance of confidentiality."  Argall Decl. ¶ 93.  First, defendant must cross the "law enforcement threshold," as with all exemption 7 claims.  The information being withheld is portions of interviews that would disclose the identity of FBI sources.  This information was clearly gathered for the purpose of law enforcement.

Next, the Court must determine whether implied confidentiality exists, as defendant claims. *Id.* ¶ 94.  Defendant failed to explain on under what circumstances its sources were assured of confidentiality, claiming only that it was implied and that to find otherwise would "have a chilling effect on the activities and cooperation of those and other future FBI confidential sources." *Id.*  Though unimpressed with defendant's vague assertion, this Court will uphold its precedent of implying confidentiality to sources who provide information about drug crimes. *See Lasko*, 684 F. Supp. 2d at 134; *see also Fischer v. DOJ*, 596 F. Supp. 2d 34, 49 (D.D.C. 2009) (implying confidentiality to cooperative witnesses in a narcotics trafficking case). Exemption 7(D) was properly invoked regarding information that would disclose the identities of FBI sources.

### 7.  Exemption 7(E)

Exemption 7(E) protects from disclosure law enforcement records "to the extent that the production of such law enforcement records or information . . . would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law."  5 U.S.C. § 552(b)(7)(E).  *See Morley v. CIA*, 508 F.3d 1108, 1129 (D.C. Cir. 2007) (refusing to be overly formalistic and finding that withholding of documents that would release insight into agencies' investigatory or procedural techniques is also proper).

### A.  FBI SA Procedures and Techniques

In the case at hand, defendant asserts exemption 7(E) "to protect procedures and techniques used by FBI agents to conduct criminal investigations" and techniques "used by FBI SAs during the investigation of plaintiff's drug activities and plot to kidnap the granddaughter of

a federal judge." Argall Decl. ¶¶ 96–97.  It claims that disclosure would minimize the

techniques' efficacy and allow criminals to educate themselves about FBI procedures and

thereby avoid apprehension.  *Id.*  By saying this, defendant does nothing but parrot the statutory

language.  Affidavits claiming exemptions must still be sufficiently detailed to allow effective

judicial review.  *Church of Scientology*, 662 F.2d at 786.  The Court appreciates that some

information is extremely sensitive.  Secret law enforcement techniques need not be described

even generally if doing so will disclose the very information the agency seeks to withhold.  *See,*

*e.g.*, *National Security Archive v. FBI*, 759 F. Supp. 872, 885 (D.D.C. 1991).

If a party wishes to claim secrecy and not describe the techniques in any way, it is free to

submit the documents for an *in camera* inspection.  *Church of Scientology*, 610 F.2d at 831–32

(citing *Albuquerque Pub. Co. v. DOJ*, 726 F. Supp. 851, 857 (D.D.C. 1989)).  Defendant

submitted the documents for an *in camera* inspection at the Court's request.  Having reviewed

the documents, the Court determines that all documents were properly withheld pursuant to

exemption 7(E).  They describe secret law enforcement techniques and procedures, and their

disclosure would promote circumvention of the law.  The Court recognizes the sensitive nature

of the documents, and an *in camera* inspection affirms defendant's claims.

### B.  DEA VIN Numbers

The DEA also withheld vehicle identification numbers (VIN) "associated with assets

turned over to law enforcement agencies for official use [that] could pose a risk of danger to law

enforcement personnel and compromise the use of forfeited vehicles in undercover operations."

Bordley Decl. ¶ 9.  The vehicles at issue are used to carry out DEA's law enforcement

responsibilities.  Public disclosure of VINs could allow clever criminals to circumvent the law by

determining which vehicles are used in DEA's law enforcement operations.  *See id.*  Therefore,

in light of no adequate objection by plaintiff, this Court finds that DEA properly withheld the VIN under exemption 7(E).

### III.     Plaintiff's Motions for Sanctions

Sanctions may be rendered against a party who violates Rule 11(b) "after notice and a reasonable opportunity to respond" is given. Fed. R. Civ. P. 11(c)(1). The allegedly offending party must be served twenty-one days before a motion for sanctions is filed with the Court, allowing an opportunity for that party to rectify its behavior before the judicial imposition of sanctions. *See* Fed. R. Civ. P. 11(c)(2). This procedural rule must be satisfied before the Court considers the substantive aspects of plaintiff's motion. Defense counsel received plaintiff's motion six days prior to it being filed. Mem. in Opp. to Pl.'s Mot. for Sanctions Under Rule 11 Against the Defs. 2 n.1. This falls woefully short of the twenty-one days required by the Federal Rules. On this basis alone, plaintiff's motion should be denied. However, even if the procedural hurdle had been jumped, plaintiff would not have crossed the finish line. His substantive arguments are incredulous enough to merit only limited discussion. Plaintiff alleges that defendant has (1) "continually filed motions for extension of time, under false pretenses," (2) "knowingly fabricated exhibits GG and HH," and (3) "knowingly presented this court with [a] false, fabricated and highly prejudice [*sic*] tale" that plaintiff was conspiring against a federal judge. Pl.'s Mot. for Sanctions under Rule 11 Against the Defs. 3. While ancillary arguments were made and rebutted,[5] this Court finds no reason to delve any deeper into plaintiff's accusations. Plaintiff has simply provided no probative evidence to buttress his claims. "The imposition of Rule 11 sanctions is generally not something the court takes lightly; Rule 11

---

[5] For example, plaintiff alleges that defendant knowingly sent FOIA responses to an incorrect address. Pl.'s Mot. for Sanctions under Rule 11 Against the Defs. 3. Defendant rebuts by saying that Rule 11 applies only to submissions *to the court*, not between parties, which nullifies sanctions for inter-party communications. Mem. in Opp. [79] 7.

sanctions are an extreme punishment for filing pleadings that frustrate judicial proceedings."

*Wasserman v. Rodacker*, 2007 WL 2071649, at \*7 (D.D.C. July 18, 2007) (quoting *Taylor v. Blakely*, 2006 WL 279103, at \*7 (D.D.C. Feb. 6, 2006)).  The Court finds no reason for such an extreme punishment without substantial evidence that defendant frustrated judicial proceedings. Plaintiff's Motion for Sanctions is denied.  For the reasons stated above, and because plaintiff's Motion [80] to Supplement his Motion for Sanctions adds no substantive arguments,[6] it too is denied.

## IV.    Conclusion

After considering the motions, replies, record, and all relevant materials to this matter, the Court finds that: (1) defendant's Motion to Dismiss should be denied based on the factual evidence now disclosed, (2) defendant's search for plaintiff's records was adequate, (3) exemption 2 was improperly invoked regarding FBI SA phone numbers, (4) exemption 3 was properly invoked regarding grand jury information, electronic surveillance, and pen register information, (5) exemption 6 was improperly invoked regarding FBI SA phone numbers, (6) exemption 7(C) was properly invoked regarding FBI SA phone numbers, identifying information of FBI SAs, support personnel, law enforcement personnel, third parties, and USMS asset seizures, (7) exemption 7(D) was properly invoked regarding FBI confidential sources, (8) exemption 7(E) was properly invoked regarding FBI SA procedures and DEA VIN numbers, (9) plaintiff's Motion [74] for Sanctions is unmerited, and (10) plaintiff's Motion [80] to Supplement his Motion for Sanctions adds no meritorious arguments.  For the foregoing reasons,

---

[6] Defendant correctly asserts that this motion, while intended to be a supplemental motion for sanctions, "is primarily a sur-reply to Defendant's reply in support of dismissal or, in the alternative, for summary judgment . . . . It further argued primarily as to the legal standards of Federal Rules 12(b)(1) and 56, and did not explain how the new 'allegations' would be a violation under Rule 11."  The Court finds it only logical to deny a motion that contains no support for what its title purports to do.  The motion simply does not center on Rule 11 sanctions, and the one paragraph that does alleges wrongdoing against a party that has already been dismissed in this action.  *See* Plaintiff's Motion [80] to Supplement Plaintiff's Motion for Sanctions at 1.

defendant's Motion [66] to Dismiss or in the Alternative for Summary Judgment is GRANTED,

plaintiff's Motion [74] for Sanctions is DENIED, and plaintiff's Motion [80] to Supplement his

Motion for Sanctions is DENIED.

 A separate order consistent with this Memorandum Opinion shall issue this date.

 Signed by Royce C. Lamberth, Chief Judge, on July 10, 2012.